IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAWANDA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-CV-1216-WKW |
| | ) | (WO) |
| MGA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the defendant's Motion for Summary Judgment (Doc. #

22), filed on November 11, 2005.  For reasons to be discussed, the Court finds that the Motion for

Summary Judgment is due to be GRANTED.

**I.  FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable

to the non-movant, show the following:

Plaintiff Tawanda Smith ("Smith"), an African-American female, began working for MGA,

Inc. ("MGA") (d/b/a "Movie Gallery") in March 2002 as a temporary employee.  In July of that year,

she was hired full-time as an administrative assistant in the loss prevention department.  In August

2003, Smith was transferred to the benefits/human resources department, where she worked as a

benefits specialist.  Three other MGA employees, all Caucasian females—Leah Sellers ("Sellers"),

Shannon Sharpe ("Sharpe") and Heather Bradshaw ("Bradshaw")—also worked as benefits

specialists.  All four benefits specialists had difficulty working with Linda Owens ("Owens"), the

benefits manager.  In June 2004, Smith complained to Karla McCormick ("McCormick"), MGA's

assistant human resources director, and Christie Forrester ("Forrester"), MGA's in-house counsel, about Owens' treatment of her. Smith believed Owens' treatment was based on her (Smith's) race. On one occasion, Owens initiated an activity in the benefits department in which each employee would bring in a baby picture to display on a bulletin board, and other MGA employees would guess which picture matched with which employee. Owens made the comment that everyone would know which picture was Smith's. On another occasion, when Smith took a week off from work for her mother's funeral, Owens said to her, "I don't know what you people do, but what we do is we go ahead and just put them in the ground, so I don't see why you have to be out that whole week." McCormick and Forrester investigated Smith's complaint; as a result of the investigation, Owens was removed from her position as benefits manager and assigned to another job, outside of the benefits department. Smith did not have any further complaints about Owens after she was removed from her position.

As part of its Movie Gallery video rental business, MGA reviews, buys and distributes adult videos. Some adult videos are kept in the work spaces of MGA employees, including in employee Dan Richards' ("Richards") office, and in and near employee Carrie Parrish's ("Parrish") cubicle. Smith observed the covers of adult videos in Richards' office on less than five occasions; she observed the covers of adult videos in Parrish's cubicle on a hundred or more occasions and on the floor outside Parrish's cubicle on ten occasions. Smith also states that she observed the covers of adult videos in the employee break room, where videos of all types are available for employees to view.[1] Smith admitted that she did not have to walk by Richards' office or Parrish's cubicle; she

---

[1] MGA disputes that adult videos have ever been made available to employees in the break room. However, construing the facts in the plaintiff's favor, the Court accepts as true that adult videos were visible in the break room.

could have taken a more direct route to get from her work station to the break room that would have allowed her to avoid Richards' office and Parrish's cubicle.  She never complained to anyone at MGA about the presence of adult videos.

On August 17, 2004, Smith submitted a resignation letter to MGA, stating that her resignation would be effective August 27, 2004.  The letter contained the following statement:

> I would like to take this opportunity to thank you for all you have done.  I really appreciate you giving me the opportunity not only to grow as an individual in the Benefits/HR Department but also to grow as an employee.  I have enjoyed working for Movie Gallery and I hope that (if need be) I will be able to return.

Smith states that she resigned because she had been told that employees in the benefits department would not be receiving raises, and because of the way Owens had treated her in the past.  Smith stated in her deposition that she would have remained at MGA if she had received a $1.00 per hour raise.

On her last day of work, August 27, 2004, Smith learned that her co-worker, Leah Sellers, had just received a promotion.  Sellers had been given the title "senior benefits specialist" and a raise of $1.00 per hour.  McCormick stated that she decided to promote Sellers after Smith had tendered her resignation.  Due to employee turnover, Sellers was to be the last benefits specialist left in the department.  She had been working as a benefits specialist since December 2001.  Prior to resigning, Smith did not make known her desire for a raise.  When she was informed of Sellers' promotion, Smith did not express an interest in being considered for a similar promotion, nor did she express her willingness to stay at MGA if she were offered a $1.00 per hour raise.

On December 20, 2004, Smith filed a complaint against MGA, claiming that MGA discriminated against her on the basis of her race when it failed to promote her to senior benefits

specialist. Smith also claimed that she was subjected to both a race- and sex-based hostile work environment, and alleged a claim of constructive discharge. MGA filed its Motion for Summary Judgment on November 11, 2005. Smith filed a response on December 5, 2005, and MGA filed its reply on December 7, 2005.

## II. JURISDICTION AND VENUE

Because this case arises under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.,* the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV. DISCUSSION

Smith brings claims under both Title VII and 42 U.S.C. § 1981. These claims "have the same requirements of proof and use the same analytical framework"; therefore, the Court will "explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Title VII provides that it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." 42 U.S.C.A. § 1981 (a).

A.    *Failure to Promote*

Because Smith presents circumstantial, rather than direct, evidence of discrimination, her

5

failure to promote claim is governed by the analysis found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this test, the plaintiff has the initial burden of establishing a *prima facie* case of unlawful employment discrimination.  *Id*. at 802; *Young v. Gen. Food Corp*., 840 F.2d 825, 828 (11th Cir. 1988).  In order to establish a *prima facie* case of failure to promote, Smith must show that: "(1) she is a member of a protected class, (2) she was qualified and applied for the promotion, (3) she was rejected despite her qualifications, and (4) other equally or less qualified employees who were not members of the protected class were promoted."  *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079 (11th Cir. 2004).  "[W]here an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post."  *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 (11th Cir. 2005).  "Although [the plaintiff] need not show that [s]he applied for the [position], [s]he must show that [s]he was qualified for the position in order to make out a prima facie case of discrimination." *Jones v. Firestone Tire and Rubber Co., Inc*., 977 F.2d 527, 533 (11th Cir. 1992).

In the present case, Smith has not carried her burden of establishing a *prima facie* case of discrimination for failure to promote.  Smith has shown only that she is a member of a protected class; she has not shown that she applied for a promotion, was qualified for a promotion, or was rejected for a promotion.  While it is true that MGA did not formally announce the position of senior benefits specialist, Smith has not submitted any evidence establishing that MGA had a reason to consider her for the job.  In fact, Smith testified in her deposition that, at the time Leah Sellers was offered the position, Smith had already given two weeks' notice and made known her decision to resign.  (Smith Dep. at 65.)  It was on Smith's last day of work with MGA that Sellers was offered

the promotion. *Id.* Even though Smith stated that one of her main reasons for leaving the job was that she had been told she would not be getting a raise, she stated that she never expressed her desire to be paid an additional $1.00 per hour, nor did she express to anyone at MGA that this was her primary reason for resigning. (Smith Dep. at 72-73.) Smith stated that she believed MGA should have offered her a promotion to senior benefits specialist, despite the fact that she had already resigned from the company, and despite the fact that Sellers had more experience than Smith as an employee in the benefits department. (Smith Dep. at 67, 72-73; McCormick Aff. ¶ 3.)

The Eleventh Circuit has stated quite clearly that a plaintiff's mere disagreement with an employer's business decision is not evidence of discrimination. "[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000). *See also Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Smith, however, is asking the Court to do exactly what the case law prohibits—to substitute its own judgment for that of her employer. The Court is not in a position to decide whether MGA should have offered Smith a promotion, despite her resignation and lack of expression of interest in staying with the company. The Court is only in a position to determine whether or not Smith was denied a promotion because of her race. Based on the utter lack of evidence demonstrating even a *prima facie* case of discrimination, the Court cannot conclude that MGA acted unreasonably or with discriminatory animus. MGA's Motion for Summary Judgment as to Smith's failure to promote claim is therefore due to be granted.

B.     *Hostile Work Environment*

To prove a *prima facie* case of hostile work environment harassment based on race or sex the plaintiff must show: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  The Supreme Court has stated that an "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Smith first claims that she was subjected to a racially hostile work environment because Linda Owens, her supervisor, made racially offensive comments concerning Smith's time off for her mother's funeral and a baby picture contest.  (Smith Dep. at 114; Ex. 5 to Smith Dep.)  The Eleventh Circuit "has required pervasive conduct by employers before finding that a hostile work environment existed . . . ." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231-32 (11th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002).   "In assessing whether harassment is objectively severe and pervasive, courts typically look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247-48 (11th Cir. 2004).  Under this standard, the comments made by Owens to Smith can hardly be found to be severe and pervasive.  Smith cites

only two comments that implicated her race.   While Smith may have found the comments humiliating, she refers to no conduct that was physically threatening, nor does she allege that Owens' comments interfered with her work performance.   Further, when Smith complained about Owens to her superiors, Owens was removed from her position as supervisor of the benefits division, and Smith stated that, after Owens' removal, she did not experience any further problems.  (Smith Dep. at 53.)  Smith has not produced sufficient evidence to establish that she was subjected to a hostile work environment on the basis of her race.  MGA' Motion for Summary judgment as to Smith's hostile work environment claim based on race is therefore due to be granted.

Likewise, Smith has not offered sufficient evidence to show that she was subjected to a hostile work environment on the basis of her sex.  Smith states that the presence of adult videos in the workplace created a hostile work environment.  However, Smith cannot show that she was harassed based on her sex.  Even if the mere presence of adult videos constituted harassment, Smith presents no evidence to establish that the videos were displayed only in places where they would be seen by women, or that the images on the video covers portrayed only women.  Instead, Smith stated that she had seen the videos in the office of a male employee, in and around the cubicle of a female employee, and in the employee break room.  She stated that the videos were visible by both male and female employees, and that the covers portrayed the body parts of both men and women.  (Smith Dep. at 93.)  In order to violate Title VII, harassment must be directed toward an employee *because of his or her sex*.  "'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'"  *Oncale v. Sundowner Offshore Services, Inc*.,  523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 25 (1993) (Ginsberg, J., concurring)).  Because it is

undisputed that the adult videos were visible by both male and female employees, Smith has failed to establish that she was subjected to a hostile work environment based on her sex.  MGA's Motion for Summary judgment as to Smith's hostile work environment claim based on sex is therefore due to be granted.

C.    *Constructive Discharge*

"The threshold for establishing constructive discharge . . . is quite high."  *Hipp*, 252 F.3d at 1231.  In order to succeed on a constructive discharge claim, a plaintiff must demonstrate that working conditions were "so intolerable that a reasonable person in her position would have been compelled to resign."  *Poole v. Country Club of Columbus, Inc*., 129 F.3d 551, 553 (11th Cir. 1997) (quoting *Thomas v. Dillard Dep't Stores, Inc*., 116 F.3d 1432, 1433-34 (11th Cir. 1997)). "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Russell Corp*., 218 F. Supp. 2d 1283, 1299 (M.D. Ala. 2002) (citations omitted).  "The plaintiff's subjective feelings about her employer's actions are not considered; instead, the standard is whether a reasonable person in her position would be compelled to quit."  *Id*.

Based on the evidence presented by Smith, she has not established that her working conditions were such that a reasonable person would have been compelled to leave.  When Smith complained about Owens, her complaints were promptly addressed.  Owens was removed from her position, and Smith stated that she did not subsequently experience any further problems with Owens.  Smith contends that she was offended by the presence of adult videos in the workplace, but, as discussed above, the mere presence of materials that Smith found objectionable is far from enough evidence to establish hostile work environment.  Moreover, the Eleventh Circuit has held that "[t]he

standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp*, 252 F.3d at 1231.  Smith has not demonstrated that she was subjected to a hostile work environment.  For these reasons, MGA's Motion for Summary Judgment as to Smith's constructive discharge claim is therefore due to be granted.

### V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1.      The defendant's Motion for Summary Judgment (Doc. # 22) is GRANTED.

2.      Any other pending motions pertaining to discovery matters are DENIED as MOOT.

3.      The pretrial conference set for April 3, 2006 is CANCELLED.

4.      The clerk is DIRECTED to remove this case from the May 15, 2006 trial docket.

A final judgment will be entered in accordance with this order.

DONE this the 29th day of March, 2006.

_____/s/  W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE